UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CAROL CHESEMORE, DANIEL DONKLE, THOMAS GIECK, MARTIN ROBBINS, and NANNETTE STOFLET, on behalf of themselves, Individually, and on behalf of the CERTIFIED SUBCLASS in the Matter Known as *Carol Chesemore, et al., v. Alliance Holdings, Inc.* United States District Court for the Western District of Wisconsin Case No. 09-CV-413,<br><br>Plaintiffs,<br><br>v.<br><br>DAVID B. FENKELL,<br><br>Defendant. | Case No. 3:18-cv-724 |

## COMPLAINT

Plaintiffs Carol Chesemore, Daniel Donkle, Thomas Gieck, Martin Robbins, and Nannette Stoflet, individually and as representatives of the Certified Subclass in the matter of *Carol Chesemore, et al., v. Alliance Holdings, Inc.*, by and through their undersigned attorneys, allege as follows:

## NATURE OF THE ACTION

1. This is an action brought under the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"), 12 Pa. Con. Stat. § 5101, *et seq.*

2. Plaintiffs bring this action to avoid certain fraudulent transfers of assets or other property by Defendant David B. Fenkell to his wife, Karen G. Fenkell; to enjoin any further such transfers or the dissipation of assets or property owned by the Defendant that would hinder or frustrate the Plaintiffs' ability to execute their monetary judgment in the matter *Chesemore v. All. Holdings, Inc.*, 886 F. Supp. 2d 1007 (W.D. Wis. 2012), *aff'd sub nom. Chesemore v. Fenkell*,

829 F.3d 803 (7th Cir. 2016) (the "ESOP Litigation"); and for such other and further relief as the Court deems necessary to protect the Plaintiffs' interests in executing their judgment in the ESOP Litigation.

3. Defendant David Fenkell, upon information and belief, engaged in a series of transactions, beginning in 2007, through which he "transferred virtually everything" into his wife Karen Fenkell's name. Transcript of Record, *Chesemore v. All. Holdings*, *Inc.*, 886 F. Supp. 2d 1007 (W.D. Wis. 2012) (No. 1104).

4. The subject transfers of assets and property from David Fenkell to Karen Fenkell were undertaken to avoid the judgment in the ESOP Litigation and to thwart the Plaintiffs' ability to hold David Fenkell responsible for the economic harm caused by his violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*.

## PARTIES

5. Plaintiffs are individuals and representatives of a Certified Subclass in the ESOP Litigation, who, together, own an award of attorneys' fees against Defendant David Fenkell in the amount of $1,854,008.50.

6. Plaintiff Carol Chesemore was an employee of Trachte Building Systems, Inc. ("Trachte") from 1988 until May 2006. She is an adult who currently resides in Sun Prairie, Wisconsin.

7. Plaintiff Daniel Donkle was an employee of Trachte from 1988 until 1998. He is an adult who currently resides in Cambridge, Wisconsin.

8. Plaintiff Thomas Gieck was an employee of Trachte from 1969 until he was laid off on April 30, 2009. He is an adult who currently resides in Sun Prairie, Wisconsin.

9. Plaintiff Martin Robbins was an employee of Trachte from 1972 until he was laid off on April 30, 2009. He is an adult who currently resides in Madison, Wisconsin.

10. Plaintiff Nannette Stoflet has been an employee of Trachte from 1986 until the present. She is an adult who resides in Sun Prairie, Wisconsin.

11. Plaintiffs were participants in the Alliance Holdings, Inc. Employee Stock Ownership Plan ("the Alliance ESOP") until August 29, 2007.

12. At that time, their accounts in the Alliance ESOP were transferred to a new ESOP sponsored by Trachte ("the "Trachte ESOP") as part of a complex, highly leveraged, multi-step transaction (the "2007 Transaction").

13. This 2007 Transaction was the subject of the ESOP Litigation.

14. Defendant David Fenkell is an adult who resides in Philadelphia, Pennsylvania. He is married to Karen Fenkell.

15. Karen Fenkell is the transferee of virtually all of David Fenkell's assets and other property not exempt from execution by judgment creditors, by virtue of a series of transfers dating to 2007.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332 and 1367, because the parties are diverse in citizenship.

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## CHOICE OF LAW

18. While jurisdiction and venue are proper in this Court, Pennsylvania law applies because 1) the parties would expect Pennsylvania law to apply to the transfers at issue in this

action, and 2) because Plaintiffs have had to register this Court's judgment in Pennsylvania in order to request that the Pennsylvania U.S. Marshal Service levy upon David Fenkell's house in Philadelphia, thus using the resources of the Pennsylvania judiciary and U.S. Marshal Service. *See Drinkwater v. Am. Family Mut. Ins. Co.*, 290 Wis. 2d 642, 658 (2006).

## BACKGROUND

### A. THE 2007 TRANSACTION AND THE PLAINTIFFS' INJURIES.

19. As part of the 2007 Transaction, the assets of the accounts of Certified Subclass members were transferred into the Trachte ESOP.

20. As part of the same transaction, the Trachte ESOP exchanged the Alliance and AH Transition stock in the Subclass members' accounts for Trachte stock, and then purchased additional shares of Trachte stock from Alliance and non-parties AH Transition Corp. and Stephen W. Pagelow.

### B. THE ESOP LITIGATION.

21. On June 30, 2009, the Plaintiffs, on behalf of themselves and the Certified Subclass, commenced the ESOP Litigation against a variety of defendants, including David Fenkell, alleging violations of various provisions of ERISA.

22. On July 24, 2012, the District Court in the ESOP Litigation issued a 97-page set of findings of fact and conclusions of law which concluded that David Fenkell violated his fiduciary duties and engaged in prohibited transactions under ERISA in connection with the 2007 Transaction. *ESOP Litigation*, 886 F. Supp. 2d 1007. The District Court concluded that David Fenkell designed the 2007 Transaction as "a classic example of 'heads I win, tails you lose.'" *Id.* at 1052.

23. The District Court found that David Fenkell was responsible for orchestrating and controlling the entire transaction, and that he was not only conflicted, but had also engaged in impermissible self-dealing by receiving certain executive compensation, the receipt and amount of which were contingent upon the completion of the transaction.

24. On June 4, 2013, the District Court issued a 39-page set of findings of fact and conclusions of law on remedies. *Chesemore v. All. Holdings, Inc.*, 948 F. Supp. 2d 928 (W.D. Wis. 2013), *amended*, No. 09-cv-413-WMC, 2013 WL 6989526 (W.D. Wis. Oct. 16, 2013), and *aff'd sub nom. Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016) (the "Remedies Decision").

25. In the Remedies Decision, the District Court concluded that "of the defendants found liable, [David] Fenkell is far and away the most culpable party." *Id*. at 946. In considering the remedies to be applied, the District Court noted the well-established proposition in ERISA cases that the purpose of remedies was to restore the participants to the position that they would have occupied but for the breaches and that any uncertainty in establishing the amount of the remedy should be against the wrongdoer. *Id.* at 940, 947.

26. On September 8, 2014, the District Court entered judgment in favor of the Plaintiffs and against David Fenkell (the "Judgment"), requiring that Fenkell do the following:

    a. Restore to the Alliance ESOP $2,044,014.42;

    b. Indemnify several co-defendants for any compensatory relief they might be required to pay;

    c. Cease serving as trustee of the Alliance ESOP; and

    d. Reimburse Plaintiffs for attorney's fees in the amount of $1,854,008.50.

*Chesemore v. All. Holdings, Inc.*, No. 09-cv-413-WMC, 2014 WL 4415919, at *12 (W.D. Wis. Sept. 5, 2014), *aff'd sub nom. Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016).

5

27. As a result of the Judgment, Plaintiffs became David Fenkell's "creditors" for the purposes of the PUFTA. PUFTA § 5102(b)(1).

28. As a result of the Judgment, David Fenkell became Plaintiffs' "debtor" for the purposes of the PUFTA. PUFTA § 5102(b)(1).

29. On October 3, 2014, David Fenkell filed a notice of appeal to the Seventh Circuit. In his appeal, David Fenkell challenged the District Court's decision, including the remedial award, Plaintiffs' class action settlements with the other defendants, and the award of attorneys' fees. *Chesemore v. Fenkell*, 829 F.3d 803, 807 (7th Cir. 2016), *cert. dismissed sub nom. Fenkell v. All. Holdings, Inc.*, 137 S. Ct. 827 (2017). On July 21, 2016, the Seventh Circuit affirmed the District Court's decision "in all respects." *Id*.

30. As a result of the Seventh Circuit's ruling, Plaintiffs sought an award of the attorneys' fees incurred defending the District Court's judgment against David Fenkell. On January 30, 2017, the Seventh Circuit granted Plaintiffs' request, and ordered David Fenkell to pay Plaintiffs an additional $223,263.80. *Chesemore v. Fenkell*, No. 14-3181 (7th Cir. Jan. 30, 2017).

### C. THE DEFENDANT'S EFFORTS TO FRUSTRATE THE PLAINTIFFS' ABILITY TO RECEIVE THE BENEFITS OF THE ESOP LITIGATION.

31. Plaintiffs' efforts to enforce the Judgment have been frustrated by David Fenkell's transfer of the assets he acquired as a result of the 2007 Transaction, as well as other assets and property, to Karen Fenkell, in an attempt to move assets beyond the reach of Plaintiffs.

32. Specifically, on August 30, 2007, David Fenkell received $2,896,100 in connection with the 2007 Transaction (the "Phantom Stock Proceeds").

33. The Phantom Stock Proceeds were deposited into a Morgan Stanley account ("MS6444") held jointly in the name of Defendant David Fenkell and Karen Fenkell.

34. Over the next few months, all of the monies in MS6444 were transferred directly or indirectly to accounts held solely in the name of Karen Fenkell.

35. This Court has previously recognized these transfers as an "attempt to move assets beyond the reach of plaintiffs." *Chesemore v. All. Holdings, Inc.*, No. 09-cv-413-WMC, 2015 WL 438140, at *2 (W.D. Wis. Feb. 3, 2015) (citing the Court's Order of November 17, 2014, Dkt. No. 1017 at 3).

36. During post-judgment discovery in the ESOP Litigation, Plaintiffs discovered that, beginning in 2007, David Fenkell transferred "virtually everything" into Karen Fenkell's name.

37. David Fenkell effectuated these transfers in an effort to insulate himself from financial responsibility for the economic damage caused by the 2007 Transaction.

38. From 2001 through 2011, David Fenkell was paid more than $27 million from Alliance Holdings (as well as more than $4 million from his personal side business, DBF Consulting, between 1999 and 2011).

39. In or around 2012, Karen Fenkell inherited approximately $600,000 from her father's estate. Upon information and belief, this is the sum total of monies Karen Fenkell has inherited or earned since 2007.

40. Karen Fenkell has not worked outside the home since 1988.

41. Upon information and belief, Karen Fenkell does not receive independent income.

42. Despite the disparity in their respective earnings and income sources over at least the last decade, all of Defendant's assets are now held in accounts titled in Karen Fenkell's name individually, save for retirement funds which are exempted from judgment creditors.

43. On April 1, 2015, Plaintiffs registered the District Court's Judgment in the Eastern District of Pennsylvania, where David Fenkell resides. *Chesemore v. All. Holdings, Inc.*, 2:15-mc-109-TJS (E.D. Pa. *filed* Apr. 1, 2015).

44. By filing writs of execution, which the Court instructed U.S. Marshals to serve upon David Fenkell, in 2015, Plaintiffs were able to collect $44,200 from David Fenkell in satisfaction of a portion of the Judgment by having two vehicles repossessed.

45. Additionally, on May 11, 2018, Plaintiffs filed another writ of execution in the Eastern District of Pennsylvania, this time seeking to levy upon David Fenkell's house. That writ was forwarded to the U.S. Marshals on May 16, 2018. *See Chesemore v. All. Holdings, Inc.*, 2:15-mc-109-TJS (E.D. Pa.) ECF No. 11.

46. As of the date of this filing, however, David Fenkell still owes Plaintiffs $1,809,808.50 in attorneys' fees for the district court action.

47. On May 24, 2018, Plaintiffs registered the Seventh Circuit's January 30, 2017 award of attorneys' fees in the Eastern District of Pennsylvania. *Chesemore v. Fenkell,* 2:18-mc-00121-UJ (E.D. Pa. *filed* May 24, 2018). On June 8, 2018, Plaintiffs filed a writ of execution seeking to levy upon David Fenkell's house, in satisfaction of the Seventh Circuit's award. That writ was forwarded to the U.S. Marshals on June 8, 2018. *See id.* at ECF No. 2.

48. As of the date of this filing, however, David Fenkell still owes Plaintiffs the entirety of the $223,263.80 awarded to Plaintiffs by the Seventh Circuit.

49. In 2017 and 2018, Plaintiffs attempted to contact counsel for David Fenkell numerous times in order to reach resolution of his outstanding obligation. Plaintiffs' counsel explained that they were considering the possibility of filing the instant action, and offered David Fenkell's counsel the opportunity to discuss the obligation out of court. Plaintiffs' counsel received no response.

50. As of February 2015, more than $12 million remained in accounts in Karen Fenkell's name only, with roughly $1.1 million in retirement accounts in David Fenkell's name.

51. Upon information and belief, funds held in David Fenkell's name were in accounts exempt from execution by judgment creditors, and which name Karen Fenkell as beneficiary.

**FIRST CAUSE OF ACTION**
**Fraudulent Transfer – 12 Pa. Stat. and Cons. Stat. Ann. § 5104(a)(1) against Defendant David Fenkell**

52. Plaintiffs restate and incorporate by reference their allegations in the foregoing paragraphs as if fully set forth herein.

53. David Fenkell incurred his obligation to pay Plaintiffs $1,854,008.50 in attorneys' fees on September 8, 2014--the day the District Court entered the final judgment against David Fenkell. He incurred his obligation to pay Plaintiffs an additional $223,263.80 on January 30, 2017--the day the Seventh Circuit entered its order.

54. In anticipation of incurring these obligations, David Fenkell transferred substantially all of his assets into accounts held solely in the name of Karen Fenkell with the "actual intent to hinder, delay or defraud" Plaintiffs, as described in PUFTA § 5104(a)(1).

55. This "actual intent" is evidenced by the following:

9

a. Because David Fenkell transferred his assets to his wife, the transfers were made to an "insider" under PUFTA § 5104(b)(1);

b. Because David Fenkell and his wife continue to live together—supported by the monies held in accounts under Karen Fenkell's name—in their house in Philadelphia, David Fenkell retains possession and control over the transferred assets under PUFTA § 5104(b)(2);

c. Of the Fenkells' combined assets, only about 8% is held in accounts under David Fenkell's name. The remaining 92% is held in accounts under Karen Fenkell's name only. Aside from her inheritance, Karen Fenkell has not contributed to the Fenkells' combined assets since 1988. Thus, the assets that are held in Karen Fenkell's name only are all attributable to David Fenkell. By transferring 92% of his income and assets into his wife's name, Fenkell transferred "substantially all" of his assets under PUFTA § 5104(b)(5).

d. Because Karen Fenkell did not give any consideration to David Fenkell for the $13 million he transferred to her, she did not give consideration "reasonably equivalent" in value to the value of the asset transferred to her under PUFTA § 5104(a)(8).

e. As a result of these transfers, David Fenkell is unable to satisfy the Judgment that he owes to Plaintiffs, as the sum of David Fenkell's debts is greater than all of his assets at fair market valuation. David Fenkell is therefore "insolvent" under PUFTA § 5102(a); and "was insolvent or became insolvent shortly after" the Court's issuance of its Judgment, under § 5104(b)(9).

    f.    Because David Fenkell transferred his assets to his wife shortly after the Court issued a judgment against him in the amount of over $1.8 million, the transfer occurred shortly after David Fenkell incurred a "substantial debt," under PUFTA § 5104(b)(10).

56.    The factors enumerated in paragraphs 48(a)-(f) demonstrate David Fenkell's "actual intent" to defraud Plaintiffs under PUFTA § 5104(a)(1).

57.    David Fenkell's transfers of his assets into accounts held in his wife's name were therefore fraudulent as to Plaintiffs.

58.    Plaintiffs are initiating this action within four years of September 8, 2014—the day David Fenkell's first obligation was incurred—pursuant to PUFTA § 5109.

59.    The transfer of property from David Fenkell to Karen Fenkell between 2007 and 2015 is therefore avoidable as a fraudulent conveyance pursuant to PUFTA § 5104.

## SECOND CAUSE OF ACTION
**Fraudulent Transfer – 12 Pa. Stat. and Cons. Stat. Ann. § 5104(a)(2) against Defendant David Fenkell**

60.    Plaintiffs restate and incorporate by reference their allegations in the foregoing paragraphs as if fully set forth herein.

61.    Additionally, or in the alternative, David Fenkell's transfers of his assets into accounts held in his wife's name were fraudulent as to Plaintiffs under PUFTA § 5104(a)(2).

62.    David Fenkell incurred his obligation to pay Plaintiffs $1,854,008.50 in attorneys' fees on September 8, 2014--the day the District Court entered the final judgment against David Fenkell. He incurred his obligation to pay Plaintiffs an additional $223,263.80 on January 30, 2017--the day the Seventh Circuit entered its order.

63. In anticipation of incurring these obligations, David Fenkell transferred substantially all of his assets into accounts held solely in the name of Karen Fenkell between 2007 and 2015. David Fenkell did not receive anything of tangible value in exchange for the transfer of assets and property to Karen Fenkell.

64. As a result of transferring his assets into accounts under his wife's name only, David Fenkell engaged in a transaction—the transfer of assets to Karen Fenkell—for which David Fenkell's remaining assets were unreasonably small in relation to the transaction, under PUFTA § 5104(a)(2)(i).

65. Specifically, the transfers of assets from accounts jointly held by Karen and David Fenkell to accounts held by Karen Fenkell alone shifted 92% of the couple's combined assets to Karen Fenkell.

66. As a result of these transfers, David Fenkell's remaining assets – only 8% of the couple's combined assets – were unreasonably small in relation to the transfers. Further, that 8% is exempted from judgment, meaning Mr. Fenkell actually reduced his assets to zero as far as his ability to pay the judgment against him.

67. David Fenkell's transfers of his assets into accounts held in his wife's name were therefore fraudulent as to Plaintiffs under PUFTA § 5104(a)(2)(i).

68. Plaintiffs are initiating this action within four years of September 8, 2014—the day David Fenkell's first obligation was incurred—pursuant to PUFTA § 5109.

69. The transfer of property from David Fenkell to Karen Fenkell between 2007 and 2015 is therefore avoidable as a fraudulent conveyance pursuant to PUFTA § 5104(a)(2).

**THIRD CAUSE OF ACTION**
**Punitive Damages – 12 Pa. Stat. and Cons. Stat. Ann. § 5107(a)(3)(iii) against Defendant David Fenkell**

Case: 3:18-cv-00724-wmc   Document #: 1   Filed: 08/30/18   Page 13 of 15

70. Plaintiffs restate and incorporate by reference their allegations in the foregoing paragraphs as if fully set forth herein.

71. David Fenkell's conduct in transferring his assets into his wife's name in order to avoid satisfying the Court's judgment was outrageous, demonstrating willful, wanton, or reckless conduct, and evincing an evil motive and a reckless indifference to the rights of others.

72. David Fenkell anticipated that he would incur a judgment related to his conduct in the 2007 Transaction. He therefore deliberately transferred his personal wealth into his wife's name in an attempt to move those monies out of Plaintiffs' reach.

73. Despite Plaintiffs' repeated attempts to collect their award of attorneys' fees without the Court's intervention, and knowing that David Fenkell owes Plaintiffs a combined attorneys' fee award of over $2 million, David Fenkell's counsel has ignored Plaintiffs' counsel's calls and emails.

74. If not for the fraudulent transfer of his assets into his wife's name, David Fenkell would have enough personal wealth to be able to pay his entire obligation several times over.

75. Due to his outrageous conduct in attempting to shield his assets from his creditors and his reckless indifference to Plaintiffs' rights to their attorneys' fee award, punitive damages are merited against David Fenkell pursuant to PUFTA § 5107(a)(3)(iii).

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs request that the Court enter judgment and other appropriate orders awarding the following:

13

1.      Ordering David Fenkell to submit to the Court and counsel for the Plaintiffs an accounting that details all assets or property having a value over $9,000.00 transferred to Karen Fenkell since August 1, 2007;

2.      Voiding all fraudulent transfers of assets and property from David Fenkell to Karen Fenkell between 2007 and 2015;

3.      Declaring that assets and property assets reasonably traceable to fraudulent transfers by David Fenkell to Karen Fenkell between 2007 and 2015 are available to satisfy the Judgment;

4.      Preliminary and permanent injunctive relief restraining David Fenkell from transferring assets or property to Karen Fenkell or any other third party without leave of the Court until the Judgment is satisfied in full;

6.      Awarding Plaintiffs their costs and disbursements of this action, including attorney's fees as allowed by law, including without limitation pursuant to ERISA § 502(g)(1), 29 U.S.C.A. § 1132(g)(1);

7.      Awarding Plaintiffs punitive damages against David Fenkell in an amount to be determined; and

8.      Such other and further relief as the Court deems appropriate.

Dated this 30th day of August, 2018.

                                          Respectfully Submitted,

                                          By: */s/ Andrew W. Erlandson*

                                          Andrew W. Erlandson
                                          HURLEY BURISH, S.C.
                                          33 East Main Street, Suite 400
                                          Madison, WI 53703

(608) 257-0945 Telephone
(608) 257-5764 Facsimile
aerlandson@hbslawfirm.com


Julie Selesnick
Julia Horwitz
COHEN MILSTEIN SELLERS
& TOLL, PLLC
1100 New York Avenue, NW
West Tower, Suite 500
Washington, DC 20005-3934
(202) 408-4600 Telephone
(202) 408-4699 Facsimile

*Counsel for Plaintiffs*